# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

SEP 4 2024 AM 9:19
FILED-USDC-NDTX-FW

NICOLE KNOX-MORRIS,
Plaintiff

v.

CVS HEALTH,
Defendant

4-24CV-840-O

Civil Action No.

**COMPLAINT**

See attached

\* Attach additional pages as needed.

| | |
|---|---|
| Date | September 3, 2024 |
| Signature | *[signed] Nicole Morris* |
| Print Name | NICOLE KNOX-MORRIS |
| Address | 133 NE MICHAEL DR |
| City, State, Zip | BURLESON, TX 76028 |
| Telephone | (708) 574-7085 |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NICOLE KNOX, Morris<br>*Plaintiff,*<br><br>v.<br><br>**CVS HEALTH,**<br>*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

CVS Health ("CVS") subjected Nicole Knox, an African American employee, to race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e et seq.

In October 2018, Ms. Knox began working at CVS as a contractor. Ms. Knox was such a stellar performer in this position that she was immediately converted to a full-time employee in March 2019. As a testament to her hard work, she was later promoted to Senior Manager for the Health Plan team. During her first year as Senior Manager, Ms. Knox was met with her first challenge with Molina Healthcare, Inc. ("Molina") and repaired CVS's relationship with Molina.

In February 2023, after being selected for another challenge, Ms. Knox was replaced by Molly Olague who was supposed to assume Ms. Knox's responsibilities. However, it was apparent

that Ms. Olague did not intend to take on all the duties Ms. Knox oversaw. As a result, Ms. Knox was required to perform two roles.

On March 16, 2024, Ms. Knox met with Ms. Olague's supervisor, Brittney Cook to discuss the responsibility and remedy the trasition. Specifically, Ms. Knox noted there was a double standard being applied to the performance expectations of Ms. Olague and Ms. Knox.

The discrimination and retaliation became more apparent when Ms. Knox began working with a new supervisor, Sameeksha "Sam" Jampani shortly after she joined the company reporting to Ms. Cook as Ms. Knox's supevisor. When Ms. Jampani learned that Ms. Knox was applying for internal positions, Ms. Jampani interfered and proceeded to conduct a premature mid-year evaluation of Ms. Knox. No employee was given an early mid-year evaluation.

On June 6, 2023, Ms. Knox filed a formal complaint of race discrimination with CVS's Colleague Relations Department. Approximately two months later, on August 15, 2023, CVS retaliated against Ms. Knox by placing her on a Corrective Action Plan even though her formal mid-year review, delivered on July 25, 2023, defined her as a "target leader" (meaning she had high potential/higher performing) and rated her as "Meets Expectations."

Ms. Knox seeks damages at the maximum rate allowed by law, and in support respectfully shows the following:

## I.
## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Nicole Knox is an individual who resides in Tarrant County, Texas.
2. Defendant CVS Health ("CVS") is a Delaware corporation with its principal place of business in Rhode Island. Defendant may be served through serving its registered agent for service of process in Texas, C.T. Corporation System at the following address: 1999 Bryan Street, Ste. 900 Dallas, Texas 75201.

3. Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

4. This Court has jurisdiction to hear the merits of the claims under 28 U.S.C. § 1331.

5. Venue is proper in the district and division under 28 U.S.C. § 1391(b).

## II.
## FACTUAL BACKGROUND

6. Ms. Knox, African American, began working for CVS in October 2018, as a contractor.

7. Ms. Knox was a high performer in this role.

8. Ms. Knox converted to a full-time employee in March 2019 and immediately started taking on large clients and strategic projects.

9. Ms. Knox was promoted to the Health Plan team as the Senior Manager for Molina Healthcare, Inc. ("Molina") in April 2022.

10. Molina was well known for being a difficult client and, to make matters worse, CVS had a terrible performance year with Molina.

11. Despite this, Ms. Knox was ready for a new challenge and worked diligently to give her best efforts to both CVS and Molina.

12. Ultimately, CVS's relations with Molina were repaired as evidenced by their contract renewal after threatening to go out for RFP.

13. During this time, Ms. Knox learned the best strategy to deal with Molina and her team became a well-oiled machine that Molina was satisfied with.

14. After this success, in February 2023, Ms. Knox was approached to take on her next challenge.

15. At first, Ms. Knox was apprehensive because she was committed to her team and Molina.

16. However, after identifying her replacement, Molly Olague (Caucasian), Ms. Knox felt more comfortable with this transition because there was an explicit expectation that Ms. Olague would be taking on all the duties Ms. Knox was transitioning away from.

17. Ms. Olague took over Ms. Knox's role as the Senior Manager of the Molina Healthcare relationship and she transitioned laterally to internal strategic initiatives.

18. It became readily apparent that Ms. Olague did not actually intend to take on all Ms. Knox's duties.

19. This resulted in Ms. Knox being required to do two jobs.

20. Ms. Knox was not actually transferred from the Molina account, as had previously been communicated to both her and Molina.

21. The discrimination based on her race began when she attempted to reach out to Brittney Cook (Ms. Olague's supervisor) to remedy this situation on March16, 2023.

22. In this conversation, she confronted Ms. Cook directly about the double standard being applied in the performance expectations of Ms. Knox and Ms. Olague regarding management of the Molina account.

23. This discrimination became more apparent when Sameeksha "Sam" Jampani joined the company later that month and also reported to Ms. Cook.

24. Ms. Knox later learned that Ms. Cook directly questioned an internal interview candidate (who was interviewing at the same time as Ms. Jampani) how they were going to "manage" Ms. Knox.

25. Ms. Knox was met with resistance to work cohesively to come to a resolution and apprehension to speak directly with her about the issues she faced. E.g. She was excluded from preparation meetings between Ms. Cook and Ms. Olague, Ms. Jampani made decisions about Ms. Knox's team without communicating them to her, etc.

26. In the multiple verbal and email exchanges that occurred over the next few months, it was alluded to by Ms. Olague, Ms. Cook, and Ms. Jampani that Ms. Knox was reacting to the situation based on her emotions.

27. Ms. Knox continued to give her best efforts to try and remedy the clear miscommunications and friction with her coworkers, but instead she was met with discrimination because of her race.

28. Even so, Ms. Knox continued to work diligently for CVS and even attempted to advance her career within the company, despite the discrimination against her.

29. On May 16, 2023, Ms. Knox formally applied for multiple internal positions.

30. When Ms. Jampani learned of Ms. Knox applications, she interfered and continued to discriminate against her because of her race.

31. On May 23, 2023, Ms. Knox received an email from Ms. Jampani containing a premature mid-year evaluation.

32. This was surprising to Ms. Knox because the feedback was collected two months prior to the formal mid-year review process and less than one month after annual reviews had been completed.

33. This premature review was shared with her only a few days after Ms. Jampani received notice that Ms. Knox applied to other internal roles.

34. Ms. Knox was the only person who received mid-year feedback this early.

35. Ms. Knox asked Ms. Jampani, via email, why she was the only employee evaluated so early.

36. Ms. Jampani did not give a direct answer, only that it "made sense" because two individuals had become flight risks.

37. Ms. Cook accused her of being the reason for these "flight risks", however both individuals had legitimate reasons for seeking other roles.

38. Ms. Knox would later receiving glowing feedback from her team of direct reports as a formal part of the annual feedback process.

39. Ms. Jampani also lied to Ms. Knox by stating that she did not speak to her team for feedback in one-on-one settings, even though she had admitted this fact in earlier conversations. The team also confirmed she spoke to them.

40. The confusion and turmoil surrounding the Molina transition had still not been alleviated at this point.

41. Ms. Knox was still being accused by Ms. Jampani, Ms. Olague, and Ms. Cook of being difficult and reacting emotionally.

42. Ms. Knox did not feel heard about her coworkers and was continuing to do a job that she was supposed to be transitioned from.

43. On May 24, 2023, Angela Horvat, Molina's lead implementation manager who reported to Ms. Knox, hit a height of frustration after an exchange with Ms. Jampani regarding her concerns with Ms. Olague's lack of support on the Molina client.

44. Ms. Horvat was experiencing similar issues with Ms. Olague and confusion regarding her role and responsibilities surrounding the Molina account.

45. Ms. Horvat brought these concerns to light, the same way Ms. Knox did, by speaking with Ms. Cook and Ms. Jampani.

46. Ms. Horvat, a non-minority, was treated differently from Ms. Knox.

47. Ms. Horvat was given multiple meetings that culminated in a multi-pronged plan to support her through the dynamics of the Molina account.

48. This multi-pronged plan created a communication strategy to support Ms. Horvat and implemented an escalation path for her to utilize if she did not feel she was receiving adequate support.

49. Ms. Horvat was not called emotional, resistant, difficult, or challenging by CVS.

50. Ms. Knox was called emotional, resistant, difficult, and challenging by CVS, which are common discriminatory terms used in corporate America to describe black women.

51. Ms. Knox was deemed to be the source of Ms. Horvat's concerns by Ms. Cook. She was told to support Ms. Horvat during this time and to "have Ms. Olague's back."

52. It was clear Ms. Cook wanted to ignore these issues surrounding Ms. Olague.

53. Ms. Knox, however, received no support from these individuals, even though she had the same concerns, because they were discriminating against her due to her race.

54. On June 2, 2023, Ms. Horvat informed Ms. Knox that the problems and confusion still persisted, and she was going to interview for other roles within the company.

55. Ms. Horvat also informed Ms. Knox that she had a conversation with Ms. Cook, in accordance with the escalation path, in which Ms. Cook went on a rant about Ms. Knox.

56. Ms. Cook, according to Ms. Horvat, stated that this whole confusion and misunderstanding regarding Molina was Ms. Knox's fault, her responsibility, and should not have involved Ms. Olague.

57. On June 6, 2023, Ms. Knox decided to file a formal complaint of race discrimination with the Colleague Relations Department.

58. On July 25, 2023, Ms. Knox received her formal mid-year evaluation where she was described by Ms. Jampani as a "target leader" and someone who was a high performer with high potential by all leader accounts.

59. On or about August 1, 2023, CVS' Human Resources Representative Jane Gervais informed Ms. Knox that CVS had concluded its investigation and did not substantiate her complaint. Although they did admonish the team to ensure their treatment was fair and equitable

60. During this conversation, Ms. Knox challenged the efficacy of the investigation because they did not speak to all listed witnesses, including Ms. Horvat.

61. Ms. Gervais noted Ms. Horvat's specific name as someone who had not been contacted and advised Ms. Knox that she would reach back out to "leadership" and provide a follow up if anything changed.

62. On August 16, 2023, Ms. Knox was retaliated against by CVS.

63. Ms. Knox was put on a Corrective Action Plan ("CAP") that was not due to her work performance—it was due to her protected activity of reporting race discrimination occurring within CVS.

64. This was clearly not due to Ms. Knox's work performance because her formal mid-year review occurred on July 25, 2023, and she was deemed as "meets expectations" with no concerns.

65. During the mid-year review discussion, she specifically asked Ms. Jampani if she had any specific concerns regarding her performance and she said no. In fact, Ms. Jampani stated that Ms. Knox was seen as a "target leader," meaning she was a higher performer with high potential.

66. This CAP resulted in Ms. Knox's team being reassigned to other senior managers.

67. This CAP was a sham to attempt to create a paper trail and push Ms. Knox out of the company.

68. This was a complete surprise to her due to her strong evaluation in March 2023.

69. Further, there were no concerns about her performance while CVS was supposedly investigating her complaint. Nor have there been any other concerns expressed since Ms. Knox retained legal counsel.

70. Two weeks after Ms. Knox retained legal counsel, Ms. Jampani would state "all of this was a misunderstanding" and note that Ms. Knox would be removed from the CAP as soon as possible after she returned from pre-planned time off.

## III.
## RACE DISCRIMINATON IN VIOLATION OF
## 42 U.S.C. § 2000E ET SEQ., TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

71. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

72. As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964.

73. The employment practices complained of above were intentional.

74. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

75. Plaintiff timely filed a complaint of discrimination with the United States Equal Employment Opportunity Commission and received a notice of right to sue. Plaintiff has filed this suit within 90 days of receipt of this notice.

76. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

77. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

## IV.
## RACE DISCRIMINATON IN VIOLATION OF
## 42 U.S.C. § 1981 ET SEQ., THE KU KLUX KLAN ACT

78. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

79. As described above, Defendant's actions constitute unlawful discrimination on the basis of Plaintiff's race in violation of 42 U.S.C. § 1981.

80. The employment practices complained of above were intentional.

81. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Section 1981.

82. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

83. As a result of Defendant's unlawful discrimination, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

84. Defendants acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally-protected rights. Plaintiff therefore seeks punitive damages.

85. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position she would have been in but for Defendant's unlawful discrimination.

86. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 1981.

## V.
## RETALIATION IN VIOLATION OF
## 42 U.S.C. § 2000e ET SEQ., TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

87. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

88. As described above, Defendant's actions constitute unlawful retaliation because of Plaintiff's protected activity, including complaining of race discrimination and race-based harassment in the workplace, in violation of Title VII of the Civil Rights Act of 1964.

89. The employment practices complained of above were intentional.

90. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims under Title VII.

91. Plaintiff timely filed a complaint of discrimination with the United States Equal Employment Opportunity Commission and received a notice of right to sue. Plaintiff has filed this suit within 90 days of receipt of this notice.

92. As a result of Defendant's unlawful retaliation, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

93. As a result of Defendant's unlawful retaliation, Plaintiff has harms and damages including but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

94. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages.

95. Additionally, Plaintiff seeks any and all equitable relief necessary to return her to the position she would have been in but for Defendant's unlawful discrimination.

96. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 2000e-5(k).

## VI.
## RETALIATION IN VIOLATION OF
## 42 U.S.C. § 1981 ET SEQ., THE KU KLUX KLAN ACT

97. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if fully stated herein.

98. As described above, Defendant's actions constitute unlawful retaliation because of Plaintiff's protected activity, including complaining of race discrimination and race-based harassment in the workplace, in violation of 42 U.S.C. § 1981.

99. The employment practices complained of above were intentional.

100. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claims

under Section 1981.

101. Defendant acted at all relevant times with malice and/or reckless indifference to Plaintiff's federally protected rights. Plaintiff therefore seeks punitive damages under 42 U.S.C. §§ 1981 and 1981a.

102. As a result of Defendant's unlawful discrimination, Plaintiff has suffered and expects to suffer pecuniary losses, including but not limited to, lost wages and other benefits associated with her employment.

103. As a result of Defendant's retaliation, Plaintiff has suffered non-pecuniary losses including, but not limited to emotional pain, suffering, inconvenience, personal humiliation, mental anguish, loss of enjoyment of life, and other non-pecuniary damages.

104. Additionally, Plaintiff seeks any and all equitable relief necessary to return him to the position she would have been in but for Defendant's unlawful retaliation.

105. Defendant's actions referenced above have caused Plaintiff to retain the services of the undersigned counsel in order to pursue her federal rights in this action. Consequently, Plaintiff seeks attorneys' fees, expert costs, and other costs of suit under 42 U.S.C. § 1981.

## VII.
## JURY DEMAND

106. Plaintiff hereby makes a demand for a trial by jury on all issues, claims and defenses in this action.

## VIII.
## PRAYER

107. WHEREFORE, Plaintiff respectfully requests that the above-named Defendant be cited to appear in this matter and that, after jury trial by proof, he be awarded:

    i.    Back pay, including but not limited to, lost wages (salary and commissions) and other employment benefits;

    ii.    Reinstatement to Plaintiff's position of employment, equivalent position of employment, or the position of employment Plaintiff would have enjoyed but for the discrimination and retaliation;

    iii.    In the event that reinstatement is not feasible, front pay with respect to all pay and benefits Plaintiff would have received but for termination;

    iv.    Judgment against Defendants for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

    v.    Actual damages;

    vi.    Punitive damages;

    vii.    Judgment against Defendants for Plaintiff's reasonable attorneys' and experts' fees; and costs of suit; and

    viii.    Prejudgment and post-judgment interest as allowed by law;

    ix.    Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled.

Dated: ~~June~~ _____, 2024

*September 3, 2024* (handwritten)

                                    Respectfully submitted,

_/s/ Nicole Knox Morris_
Nicole Knox Morris

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NICOLE KNOX-MORRIS

**DEFENDANTS**
CVS HEALTH

**(b)** County of Residence of First Listed Plaintiff **TARRANT**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **DALLAS**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
PRO SE

Attorneys *(If Known)*
UNKNOWN

4-24CV-840-O

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | | 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 370 Other Fraud | 710 Fair Labor Standards Act | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury | 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 380 Other Personal Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| | | | | 863 DIWC/DIWW (405(g)) | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 790 Other Labor Litigation | 864 SSID Title XVI | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | 791 Employee Retirement Income Security Act | 865 RSI (405(g)) | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | [x] 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 871 IRS—Third Party 26 USC 7609 | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | 950 Constitutionality of State Statutes |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, AND 42 U.S.C. 2000E ET SEQ

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____